# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00236-CV

**Ace Property & Casualty Insurance Company, Appellant**

**v.**

**Prime Tempus, Inc., Special Deputy Receiver Under Contract to the Permanent Receiver of Highlands Insurance Company; and Eagle Star Insurance Company, Ltd., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. D-1-GN-05-004407, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Ace Property & Casualty Insurance Company ("Ace") appeals a district court order granting the Application for Authority to Settle a Claim filed by Prime Tempus, Inc. ("SDR"), special deputy receiver for Highlands Insurance Company ("Highlands"). Eagle Star Insurance Company ("Eagle Star") sued Highlands for money allegedly owing under an insurance agreement. While that suit was pending, Highlands entered receivership, and SDR was appointed its special deputy receiver. SDR subsequently negotiated a settlement agreement with Eagle Star and asked the court supervising the receivership to approve it. Ace, which had its own insurance relationship with Highlands, objected, arguing that the Eagle Star settlement was not in the Highlands estate's best interest and would violate various provisions of the Texas Insurance Code.[1] The court issued an order approving the Eagle Star settlement, and Ace appealed. We will affirm the order.

---

[1] The parties have not briefed the issue of Ace's standing to object, but we presume that Ace has standing under Texas Insurance Code article 21.28, section 3(h) (West 2004) (see footnote 2 *infra* for an explanation of why article 21.28 governs this dispute).

**FACTUAL AND PROCEDURAL BACKGROUND**

Beginning in the 1960s, Eagle Star and Highlands participated in insurance/reinsurance pools. Under these arrangements, insurers like Eagle Star got reinsurance from companies like Highlands, which meant that Highlands covered a percentage of Eagle Star's insurance payouts. As pool members, Eagle Star and Highlands also both received excess-of-loss reinsurance, which meant that yet other insurance companies would reimburse them once their payouts exceeded certain amounts. Ace joined Eagle Star's and Highlands's insurance pools in 1970.

In 2002, Eagle Star sued Highlands in California. Eagle Star claimed that Highlands owed it between six and eight million dollars in reimbursements for insurance payouts Eagle Star had made. Highlands joined Ace as a third-party defendant, claiming that as a reinsurer Ace had to indemnify Highlands for any amounts Highlands owed Eagle Star.

While the California suit proceeded, Highlands entered receivership in Travis County. *See* Tex. Ins. Code Ann. art. 21.28, § 2(i) (West 2004).[2] SDR was appointed special deputy receiver to administer the receivership. *See id*. § 2(a). SDR subsequently negotiated a settlement with Eagle Star under which Eagle Star would: (1) pay the Highlands estate $200,000; (2) release Highlands from any and all claims related to their reinsurance relationship (including the

_____

[2] Article 21.28 of the Texas Insurance Code was repealed effective September 1, 2005, but it nevertheless governs here because this dispute commenced before September 1, 2005. *See* Act of 2005, 79th Leg., R.S., ch. 995, § 10(b) ("A proceeding or cause of action brought under Article 21.28, Insurance Code, as it existed before its repeal by this Act . . . that was filed or commenced before the effective date of this Act is governed by the law in effect at the time the proceeding or cause of action was filed or commenced, and that law is continued in effect for that purpose.").

2

California lawsuit); and (3) obtain the rights to all of Highlands's excess-of-loss and reinsurance entitlements (including any amounts owing from Ace).

SDR asked the special master supervising Highlands's receivership to approve the Eagle Star settlement. Ace objected and tried to reach a settlement of its own with Highlands. It ultimately offered to pay Highlands $450,000 in exchange for release from any and all reinsurance liability (including third-party-defendant liability in the California lawsuit).

SDR concluded that the Highlands estate would be better served by settling with Eagle Star than with Ace. The special master agreed, and he wrote a memorandum recommendation to the district court relaying his conclusion. Ace objected to the recommendation, but the district court adopted it and approved the Eagle Star settlement. Ace appealed.

**STANDARD OF REVIEW**

We review for abuse of discretion a district court's approval of a receiver's application for authority to settle a claim. *See Salaymeh v. Plaza Centro, LLC*, 258 S.W.3d 236, 240 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Cornelison v. First Nat'l Bank*, 218 S.W. 2d 888, 890 (Tex. Civ. App.—Austin 1949, writ ref'd n.r.e.). We can only overrule a district court's decision to approve such an application if the court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *See Gibson v. Smith*, 511 S.W.2d 327, 329 (Tex. Civ. App.—Tyler 1974, no writ). We cannot substitute our judgment for the trial court's reasonable judgment even if we would have reached a contrary conclusion. *Id.* Put another way, an "abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence." *Hisaw & Assocs. Gen. Contractors, Inc. v. Cornerstone Concrete Sys.*, 115 S.W.3d 16, 20

3

(Tex. App.—Fort Worth 2003, pet. denied) (citing *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978)).

## DISCUSSION

Ace argues that the district court abused its discretion in approving the Eagle Star settlement for four reasons: (1) the settlement was not in the best interest of the Highlands estate; (2) the settlement violates the Insurance Code by transferring certain rights before the closing of the Highlands estate, thereby creating a subclass of creditors; (3) the settlement violates the Insurance Code by failing to acknowledge Ace's setoff rights; and (4) the settlement violates the Insurance Code by depriving Ace of the right to interpose defenses to Eagle Star's claims against Highlands and recover the costs incurred in doing so. We will address each issue in turn.

### *Whether the Settlement Was in the Best Interest of the Highlands Estate*

Under the now-repealed Insurance Code provisions that still govern this case, receivers must conserve the assets of estates in their charge. *See* Tex. Ins. Code art. 21.28, § 2(e). Ace argues that SDR would violate this duty by settling with Eagle Star instead of Ace because Ace offered greater value to the Highlands estate. Eagle Star offered to pay the estate $200,000 and release it from all claims (including the California suit) in exchange for the rights to Highlands's excess-of-loss and reinsurance entitlements. Ace, in contrast, offered to pay the estate $450,000 in exchange for release from all claims made by Highlands against it. If any evidence in the record supports the conclusion that SDR would conserve Highlands's assets by settling with Eagle Star, then the trial court did not abuse its discretion by approving the Eagle Star settlement.

We conclude that the trial court did not abuse its discretion. First, the Highlands estate may incur significant legal expenses if it has to continue defending the California lawsuit,

4

which it will if it settles with Ace instead of Eagle Star, and significant liability may result if it loses the suit. Ace argues that because Eagle Star, a low-priority creditor, will likely never recover anything it wins in the California suit, Eagle Star will likely abandon the suit. *See id*. § 8(a) (creditors paid in order of priority). But even if Eagle Star does not abandon the suit, Ace argues, Highlands can simply concede liability or default, knowing that it will likely never have to pay Eagle Star because higher-priority creditors will deplete its assets.

We find this argument unpersuasive. First, Eagle Star has repeatedly represented to this Court and the district court that it will continue the California lawsuit if it does not settle with Highlands. Second, the evidence in the record does not conclusively establish that Eagle Star will never recover on a judgment in the California action.[3] In light of the expense, uncertainty, and opportunity cost of continuing to litigate in California, as well as the possibility that Eagle Star may obtain a sizeable recovery there, the district court did not abuse its discretion in determining that SDR would conserve Highlands's assets by accepting Eagle Star's settlement offer.

We note, as an additional factor, that accepting Eagle Star's settlement offer would benefit Highlands in ways unrelated to the California action. For example, SDR invested several months' worth of time and effort in negotiating the settlement agreement with Eagle Star. Reneging

---

[3] Both sides submitted documentary evidence on this matter that was not before the district court. We generally cannot consider such evidence. *See Langley v. Commission for Lawyer Discipline*, 191 S.W.3d 913, 915 (Tex. App.—Dallas 2006, no pet.) (appellate courts cannot consider documents that are not part of appellate record). Ace argues, however, that its evidence is exempt from this rule because it consists of public records capable of judicial notice. *See Besing v. Smith*, 843 S.W.2d 20, 21 (Tex. 1992). Without deciding whether Ace is correct, we decline to take judicial notice of the submitted documents because they will not affect the outcome of this appeal. *Cf. In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). This is so because other evidence supports the district court's approval of the Eagle Star-Highlands settlement. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (district court does not abuse discretion if some evidence reasonably supports its decision).

on that agreement could tarnish SDR's reputation in the eyes of Highlands creditors with whom SDR has to negotiate in the future. In addition, Ace's settlement offer to Highlands consisted of a terse letter largely devoid of significant details; thus, were SDR to pursue settlement with Ace, it would likely have to devote significant additional time and resources to negotiating a comprehensive agreement. If the parties could not ultimately reach mutually satisfactory terms, Highlands would be back to square one with no settlement to show for its efforts. Compared to this potential uncertainty, having the Eagle Star settlement in hand clearly has great value to Highlands.

Ace complains that the trial court did not consider "evidence" on all these matters, but rather took SDR's and the special master's word for them. We disagree. At a minimum, the court had before it the Eagle Star-Highlands settlement agreement and Ace's competing settlement offer. These two documents were sufficient evidence to provide a basis upon which a rational decision could be made. *See Hisaw & Assocs. Gen. Contractors*, 115 S.W.3d at 20 (trial court does not abuse discretion if it bases decision on conflicting evidence). Deciding the relative values of competing settlement offers is a perfectly appropriate exercise of discretion. *See Landon v. Jean-Paul Budinger, Inc.*, 742 S.W.2d 931, 935 (Tex. App.—Austin 1987, no writ) ("discretion" signifies power to choose among alternatives). Furthermore, the record of the hearing on Ace's objection shows that the district court did not simply rubber-stamp the special master's and SDR's recommendation to approve the Eagle Star settlement, but rather itself weighed the merits of the settlement. We will not overrule such trial-court valuations absent a result that shocks the conscience. *See Salaymeh*, 258 S.W.3d at 240.

In sum, evidence in the record supports the conclusion that SDR would not fail to conserve Highlands's assets by settling with Eagle Star rather than Ace. We overrule Ace's first point of error.

***Whether the Settlement Impermissibly Transfers Rights Before the Closing of an Estate***

Ace next argues that Eagle Star cannot legally obtain Highlands's excess-of-loss and reinsurance rights while the Highlands estate is still open. Ace cites Insurance Code article 21.28, section 3(d), which states that claims "based on unliquidated or undetermined demands . . . shall not share in any distribution to claimants until those claims are definitely liquidated, determined, and allowed." Ace asserts that the rights Highlands would transfer to Eagle Star are unliquidated and undetermined, and thus their transfer would violate the statute. It also asserts that transferring those rights would render Eagle Star an impermissible subclass of creditor. *See id*. § 8(a).

Ace appears to recognize the tenuousness of these arguments, as it actually objects to the Eagle Star settlement only "to the extent that" it violates section 3(d). By its plain terms, section 3(d) governs the distribution of assets to creditors. At issue here, however, is a settlement, not a distribution. Section 2(g) of article 21.28, entitled "Disposal of Property; Settling Claims," instead controls. It states: "The receiver may, subject to the approval of the court, (1) sell or otherwise dispose of the real and personal property, or any part thereof, of an insurer against whom a proceeding has been brought under this Article, and (2) sell or compound all doubtful or uncollectible debts, or claims owed by or owing to such insurer." Under this statute, Highlands's transfer of unliquidated assets to Eagle Star is clearly permitted. Furthermore, because Highlands's transfer of assets to Eagle Star does not violate section 3(d) of article 21.28, the transfer cannot create an impermissible subclass of creditors. We overrule Ace's second point of error.

7

***Whether the Settlement Must Acknowledge Ace's Setoff Rights***

Section 3(f) of Insurance Code article 21.28 provides that "in all cases of mutual debts or mutual credits . . . , such credits shall be set off and the balances only shall be allowed or paid." Ace correctly asserts that anything it owes Highlands, including any reinsurance claims that Highlands transfers to Eagle Star, is subject to this provision. *See Burns v. Bishop*, 48 S.W.3d 459, 466 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Highlands and Eagle Star do not dispute this proposition. Ace nevertheless contends that the Highlands-Eagle Star settlement agreement is impermissible because it does not expressly address Ace's setoff rights. We disagree.

It is axiomatic that contracting parties cannot limit the rights of non-parties. *See BML Stage Lighting, Inc. v. Mayflower Transit, Inc.*, 14 S.W.3d 395, 400 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("A contract . . . generally binds no one except the parties to it."). Thus, Ace's setoff rights exist independent of whatever settlement Highlands and Eagle Star reach. It would make no sense, as Ace seems to advocate, to require a contract to address third-party rights that the contract cannot even affect. The district court did not err in rejecting such a requirement and approving the Highlands-Eagle Star settlement despite its silence on Ace's setoff rights. We overrule Ace's third point of error.

***Whether the Settlement Vitiates Ace's Right to Interpose Defenses and Recoup Costs***

Section 10(b) of Insurance Code article 21.28 gives reinsurers the rights to interpose defenses when claims are brought against the companies they reinsure and, if successful in doing so, to recoup the involved costs. Ace argues that the settlement between Eagle Star and Highlands would deprive it of these rights. Under the terms of that settlement, Eagle Star would obtain the

8

rights to Highlands's reinsurance proceeds. Thus, Ace speculates, if Eagle Star ever determines that it has additional claims against Highlands, it will "presumably" pursue Highlands's reinsurers (including Ace) directly because it may no longer look to Highlands. If Eagle Star does so, Ace argues, Ace will be deprived of the right to interpose defenses under section 10(b).

As noted above, at issue here is a settlement that includes a conveyance of receivables—not a "claim" filed during a "delinquency proceeding." Tex. Ins. Code art. 21.28, § 10(b). Eagle Star has not yet threatened to file such a claim directly against Ace, much less actually filed one. Thus, Ace's argument is not ripe. *See Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 443 (Tex. 1998) ("A case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass."). We cannot adjudicate unripe claims. *Id*. We therefore overrule Ace's fourth point of error.

## CONCLUSION

Evidence in the record supports the notion that settlement between Eagle Star and Highlands is in the best interest of the Highlands estate and does not violate any provision of the Insurance Code. Thus, the district court did not abuse its discretion by granting SDR's Application for Authority to Settle a Claim. We affirm.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Patterson and Puryear

Affirmed

Filed:   August 26, 2009

9